IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 99-035-01-JCJ |
| CURTIS WILKERSON | : | |

ORDER TO REDUCE TERM
OF IMPRISONMENT

**BEFORE THE COURT** is a motion (ECF No. 217) filed by the defendant, Curtis Wilkerson, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), seeking a modification of his term of imprisonment to time served based on the current coronavirus pandemic, his preexisting medical conditions, and his enhanced risk of death or serious illness if he contracts COVID-19 again. The government joins that motion.

This Court is authorized under 18 U.S.C. § 3582(c)(1)(A)(i) to modify a term of imprisonment upon the finding that "extraordinary and compelling reasons" warrant the reduction. The Court finds as follows:

1. On March 21, 2000, Wilkerson and his co-defendant were convicted at trial of conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371 (Count One); armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count Two); brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(i) (Count Three); attempted armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count Four); and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Five).

2. On December 18, 2000, Wilkerson was sentenced to 447 months' imprisonment and five years of supervised release. The sentence included a period of 60 months' imprisonment on Count One, to run concurrently with a period of 63 months' imprisonment on each of Counts Two and Four; a period of 84 months' imprisonment on Count Three, to run consecutively to all counts; and a period of 300 months' imprisonment on Count Five, to run consecutively to all counts of the Indictment.

3. The defendant, inmate number 52455-066, is currently housed at FMC Butner in Butner, North Carolina. His minimum release date from the Bureau of Prisons ("BOP") is November 10, 2030. He has served approximately 58 percent of the full term, and approximately 67% of the term he would serve if he earns full good conduct time credit from this date.

4. The defendant is 45 years old and suffers from chronic kidney disease. According to the Centers for Disease Control and Prevention (CDC), chronic kidney disease puts him at higher risk of death or serious illness if he were to contract COVID-19 again.

5. On May 29, 2020, the defendant filed a Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i). *See* ECF No. 217.

6. The defendant previously submitted a request for compassionate release to the Warden of FMC Butner on April 30, 2020. The request was denied on May 1, 2020. As of May 30, 2020, the required 30-day period of exhaustion under 18

U.S.C. § 3582(c)(1)(A) had passed since the defendant presented his compassionate release request to the Warden.

7. On June 12, 2020, the government filed a response in opposition to the defendant's compassionate release. According to the government, "extraordinary and compelling reasons" did not exist to allow a sentence reduction, and consideration of all pertinent factors, including the length of sentence served and the apparent absence of any danger to the public, did not warrant a reduction to time served. *See* ECF No. 222.

8. Since the government's response was filed, the CDC has modified those medical conditions that place inmates at higher risk of death or serious illness if they were to contract COVID-19. Previously, only those individuals suffering chronic kidney disease who were on dialysis were considered to be at a higher risk of serious illness if they contracted the virus. As of the June 25, 2020, CDC revisions, all individuals who suffer from any stage of chronic kidney disease are now included in those who are at a higher risk. Since the defendant is suffering from either mild or moderate chronic kidney disease, he now does suffer from a medical condition which would qualify him for consideration for compassionate release. The government has accordingly modified its position, and upon consideration of all relevant factors, advocates that release is appropriate. The Court agrees.

9. The government and defendant agree that the defendant should still serve the previously imposed five-year period of supervised release. The government requests that for the first 12 months of the term of supervised release, the Court

should impose a condition of home confinement and electronic monitoring consistent with the release plan approved by the United States Probation Office, in addition to the conditions of supervised release previously imposed by the Court at sentencing. The defendant does not oppose this request.

10. To ensure the defendant's safety and to comply with public health guidelines, the government requests that the Court direct that the defendant be placed immediately in a 14-day quarantine at FMC Butner, unless, in the BOP's determination, this is not necessary because he has already been effectively quarantined, or is not practical given the resources of the facility. If the defendant has already been effectively quarantined at FMC Butner, or such a quarantine is not practical at this time, the government requests that the defendant be ordered to self-quarantine for 14 days at the residence approved by the Probation Office. The defendant advises that he will reside at an address approved by the Probation Office in the release plan. The government has notified the Probation Office of its support for the defendant's request for compassionate release.

**THEREFORE, IT IS ORDERED** that the defendant's Motion to Reduce Sentence under 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 76) is **GRANTED** and his term of imprisonment is reduced to time served, except as set forth in the next paragraph.

**IT IS FURTHER ORDERED** that the defendant shall be released from the custody of the Bureau of Prisons as soon as his medical condition permits, his release plan is implemented, travel arrangements can be made, and he completes a 14-day quarantine at FMC Butner (unless, in the BOP's determination, this is not necessary

because he has already been effectively quarantined, or is not practical in light of the institution's resources; in that case, the defendant shall self-quarantine for 14 days at the residence approved by the Probation Office).

**IT IS FURTHER ORDERED** that the defendant shall still serve the previously imposed five-year period of supervised release. For the first 12 months of that term of supervised release, the Court hereby imposes a condition of home confinement and electronic monitoring consistent with the release plan approved by the United States Probation Office, in addition to the conditions of supervised release previously imposed by the Court at sentencing.

**IT IS FURTHER ORDERED** that the defendant must submit to the 12-month period of home detention as soon as practicable and comply with the Location Monitoring Program requirements as directed by the U.S. Probation Office. The defendant shall be restricted to his residence at all times except for employment, education, religious services, medical, substance abuse and mental health treatment, court ordered obligations, and any other such times specifically authorized by the U.S. Probation Office. The location monitoring technology is at the discretion of the U.S. Probation Office. The government will pay the cost of the monitoring.

**IT IS FURTHER ORDERED** that the Probation Office shall notify the Court if the release plan cannot be implemented by the time that the Bureau of Prisons is prepared to release the defendant pursuant to this Order.

**ORDERED THIS _____ DAY OF _____, 2020.**

                                               **BY THE COURT:**

                                               **HONORABLE J. CURTIS JOYNER**
                                               *United States District Judge*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| v. | : | CRIMINAL NO. 99-035-01-JCJ |
| **CURTIS WILKERSON** | : | |

GOVERNMENT'S
MOTION FOR COMPASSIONATE RELEASE

The United States of America, by and through the undersigned attorneys, moves for defendant Curtis Wilkerson's compassionate release, and respectfully moves the Court pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) to modify the defendant's term of imprisonment to time served, subject to: (i) a 14-day period in quarantine as necessary to protect public health; (ii) approval by the Probation Office of the defendant's release plan; and (iii) an order that during the first 12 months of the defendant's five-year term of supervised release the defendant be subject to a condition of home confinement and electronic monitoring consistent with the release plan approved by the United States Probation Office, in addition to the conditions of supervised release previously imposed by the Court at sentencing. The defendant does not oppose these requests.

On March 21, 2000, Wilkerson and his co-defendant were convicted at trial of conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371 (Count One); armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count Two); brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(i) (Count Three); attempted

armed bank robbery, in violation of 18 U.S.C. § 2113(d) (Count Four); and using a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c) (Count Five).

On December 18, 2000, Wilkerson was sentenced to 447 months' imprisonment and five years of supervised release. The sentence included a period of 60 months' imprisonment on Count One, to run concurrently with a period of 63 months' imprisonment on each of Counts Two and Four; a period of 84 months' imprisonment on Count Three, to run consecutively to all counts; and a period of 300 months' imprisonment on Count Five, to run consecutively to all counts of the Indictment.

The defendant is currently housed at FMC Butner in Butner, North Carolina. His minimum release date from the Bureau of Prisons ("BOP") is November 10, 2030. He has served approximately 58% of the full term, and 67% of the term he would serve if he earns full good conduct time credit from this date.

The defendant is 45 years old and suffers from chronic kidney disease. According to the Centers for Disease Control and Prevention (CDC), chronic kidney disease puts him at higher risk of death or serious illness if he were to contract COVID-19.

On May 29, 2020, the defendant filed a Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i). *See* ECF No. 217.

Having had the opportunity to fully review pertinent records, it is the government's view that, as stated in 18 U.S.C. § 3582(c)(1)(A)(i), "extraordinary and compelling reasons" exist to allow a sentence reduction, and consideration of all pertinent factors, including the defendant's medical issues, and the apparent absence of any danger to the public, warrants a reduction to time served.

The government assesses the matter as follows. Under Section 3582(c)(1)(A)(i), the Court may reduce a term of imprisonment "after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . ." The pertinent policy statement of the Sentencing Commission defines "extraordinary and compelling reason" to include, in part, a matter in which "[t]he defendant is . . . suffering from a serious physical or medical condition, . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 app. note 1(A)(ii)(I). In the government's view, an inmate who presents a medical condition, from which he is not expected to recover, that has been identified by the CDC as increasing the risk of an adverse outcome from COVID-19, presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," as stated in note 1(A), as, due to his condition, the defendant may be less able to protect himself against an unfavorable outcome from the disease.

On June 12, 2020, the government filed a response in opposition to the defendant's compassionate release, on the grounds that Wilkerson did not present a CDC risk factor and therefore was not eligible for consideration for compassionate release. Since the government's response was filed, however, the CDC, upon studying recent data and studies, modified its list of medical conditions that place inmates at higher risk of

- 3 -

death or serious illness if they were to contract COVID-19. Previously, only those individuals suffering chronic kidney disease who were on dialysis were considered to be at a higher risk of serious illness if they contracted the virus. As of the June 25, 2020, CDC revisions, all individuals who suffer from any stage of chronic kidney disease are now included in those who are at a higher risk. Since the defendant is suffering from either mild or moderate chronic kidney disease, he now does suffer from a medical condition which qualifies him for consideration for compassionate release.

Therefore, the Court must now consider whether he presents a danger to the community, and consider all other pertinent 3553(a) factors.

Wilkerson does not have a substantial criminal history. In fact, his only criminal history points consist of misdemeanor charges when he was 19 and 23 years old, both of which resulted in a sentence that did not include any prison time and only a minor fine or court costs. *See* Presentencing Investigation Report ("PSR") ¶¶ 53, 61-63.

In this case, the defendant Wilkerson and co-defendant Willie Sawyer robbed the Harleysville National Bank, located in Spring City, Pennsylvania, at gunpoint, on December 11, 1998.[1] Wilkerson went into the bank wearing a mask and carrying a handgun. He pointed the gun at the bank branch manager, pushed past a bank teller while brandishing that firearm, and forced the head bank teller at gunpoint to put $18,800 into a stocking cap. Co-defendant Sawyer was waiting in a getaway car outside the bank. The

---

[1] On May 26, 2020, this Court, upon motion of the government, granted the motion of Sawyer for compassionate release, based on Sawyer's current significant ailments and the risk he faces if he contracted COVID-19.

two robbers drove away and later split the proceeds, with Wilkerson receiving more because he went into the bank with the gun and stole the money.

Shortly after the armed robbery of the Harleysville National Bank, Wilkerson, Sawyer, and a third person (who unbeknownst to the defendants was a confidential source) planned another bank robbery. On December 22, 1998, while under the surveillance of case agents, the three men drove to the Progress Bank, in Conshohocken, Pennsylvania. In order to avoid any injuries to bank employees, customers, law enforcement personnel, and the cooperating source, federal agents stopped the car in which the defendants were located and arrested them. On Wilkerson's car seat, law enforcement found a handgun and on the defendant's person, he had a mask.

The government, as required by law, notified the victim bank employees from the Harleysville National Bank of the filing of compassionate release motions by Wilkerson and Sawyer. They responded that defendant Wilkerson's actions in threatening and frightening them with a handgun when he robbed the bank resulted in lasting psychological injuries. The victims reported nightmares, trust issues, and an inability to permit people to enter their personal spaces. In addition to this, one of the victims related that she was so traumatized that she had her husband burn an expensive new outfit that she had worn at the time of the armed robbery. To this day, all three bank employee victims continue to suffer emotional trauma as a result of the defendant's criminal conduct.

Specifically, when recently contacted when Sawyer's motion was filed first and then pending, the victims advised as follows:

- One stated that she was thankful for the call. The reminder caused her to become emotional. She appeared to be crying and expressed concern about her safety in the event of Sawyer's imminent release from prison. The AUSA assured her that Sawyer is gravely ill and we do not believe he poses a threat to her.

- The second employee now lives in Florida. She voiced concern about Sawyer's release even though she is now living in Florida. She explained she is frightened and concerned for her safety and after receiving the AUSA's voice mail the previous day she was "rattled" for the remainder of the evening.

- The third employee expressed concern about Sawyer being released from prison. She mentioned she suffered from PTSD following the robbery and still becomes uncomfortable when she sees people wearing masks because the robber wore a mask when he confronted her in her office and pointed a gun at her. She stated that overall she is angry about Sawyer possibly being released from prison. When the AUSA explained Sawyer's medical issues to her she commented that she suffers from the same ailments as Sawyer so she is unsympathetic about his health concerns.

The violent circumstances of the defendant's actions in the armed robbery and the concomitant effects on the victims of his crime give us some cause for concern. However, the defendant does not have a history of violent convictions and his behavior in prison has not included much in the way of disciplinary issues, with no infraction since 2014.

We also recognize that Wilkerson is at significant risk should he become infected with COVID-19, which may spread if it enters the facility, and that he has served most of a lengthy sentence. In full, Wilkerson has been in prison for about 22 years, which is a significant sanction for the criminal conduct in this case. We further recognize that Wilkerson has completed numerous programs and classes while imprisoned, been assigned as a nurse's assistant in the Inmate Companion Program, and received a promotion to work with the Suicide Watch Team. In doing these things while imprisoned,

he may have acquired skills and discipline that he can put to use when economic circumstances permit. He is now 45 years old, and has not engaged in a violent act during the past 22 years. Finally, we believe that supervision by the Probation Office, including the one year that will be spent in home confinement, may ameliorate the risk of recidivism and danger to the community.

We further observe that if Wilkerson were sentenced now for the same crimes, his sentence would likely have been 20 years less, and he almost certainly would have already completed the term that would be imposed today. That is because he was convicted of two counts of violation of Section 924(c), for which the applicable law required mandatory consecutive sentences totaling 32 years. Under Section 403 of the First Step Act, effective December 21, 2018, the "stacked" sentences for these crimes today would be 12 years. This provision of the First Step Act was not made retroactive, and therefore this development is not a basis for compassionate release. However, upon determining that there is an "extraordinary and compelling reason" based on medical condition that allows compassionate release, this Court may consider this fact in weighing the pertinent 18 U.S.C. § 3553(a) factors.

In sum, we suggest that the considerations of danger to the community and other sentencing factors do not outweigh in this case the benefit of protecting the defendant's health during the pandemic.

The defendant advises that he will reside at an address approved by the Probation Office in the release plan. The government has notified the Probation Office of its support for the defendant's request for compassionate release.

The government and defendant agree that the defendant should still serve the previously imposed five-year period of supervised release. The government requests that for the first 12 months of his term of supervised release, the Court should impose a condition of home confinement and electronic monitoring consistent with the release plan, in addition to the conditions of supervised release previously imposed by the Court at sentencing. The defense consents to this request.

Moreover, the government requests the Court to order that, prior to the defendant's release, the BOP shall quarantine the defendant for at least 14 days at FMC Butner to ensure his safety and to comply with public health guidelines. The defense does not oppose this request. It is the policy of the Department of Justice to request the quarantine of any inmate who is released, in order to protect public health and safety. Thus, the government requests that the Court direct that Wilkerson be placed immediately in a 14-day quarantine at FMC Butner, unless this is not necessary because he has already been effectively quarantined, or if it is not practical for FMC Butner to immediately place Wilkerson in quarantine in light of the institution's resources. If Wilkerson is not quarantined at FMC Butner because that is not practical or has already occurred, then

- 9 -

Wilkerson should be ordered to self-quarantine for 14 days at the residence approved by the Probation Office.

                                              Respectfully submitted,

                                              WILLIAM M. McSWAIN
                                              United States Attorney

                                              */s/ Robert A. Zauzmer*
                                              ROBERT A. ZAUZMER
                                              Assistant United States Attorney
                                              Chief of Appeals

                                              */s/ Roberta Benjamin*
                                              ROBERTA BENJAMIN
                                              Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document has been served on defense counsel through the Electronic Case Filing (ECF) system and via e-mail:

>Kathleen Gaughan, Esq.
>Defender Association of Philadelphia
>Federal Court Division
>The Curtis Center Building
>601 Walnut Street, Suite 540 West
>Philadelphia, PA  19106
>Kathleen_Gaughan@fd.org

>*/s/ Roberta Benjamin*
>ROBERTA BENJAMIN
>Assistant United States Attorney

DATED: July 13, 2020